Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 457 - 1 | **DATE** | 3/21/2002 |
| **CASE TITLE** | United States of America vs. Stephanie Jones | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Defendant's motion for downward departure is denied. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 2 2 2002 | |
| | Notified counsel by telephone. | | date docketed | 24 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| SLB | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
MAR 22 2002

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | 01 CR 457 |
| v. ) | |
| ) | Judge George W. Lindberg |
| STEPHANIE JONES ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant has moved for a downward departure under U.S.S.G. § 5K2.13, based on a claim that she suffers from a compulsive gambling disorder. Section 5K2.13 provides that a court may impose a sentence below the applicable guideline range "if the defendant committed the offense while suffering from a significantly reduced mental capacity." A 1998 amendment to this guideline adds an application note that defines the term "significantly reduced mental capacity" as a "significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13, cmt. n.1 (1998). The Sentencing Commission added this application note to clarify that volitional impairments, as well as cognitive impairments, are included in the definition of "significantly reduced mental capacity." U.S. Sentencing Commission, 1998 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary (April 1998), Amendment No. 8.

The Seventh Circuit has held that there must be "some causal connection" between a defendant's mental condition and his criminal conduct to warrant the application of section 5K2.13. United States v. Dyer, 216 F.3d 568, 571 (7th Cir. 2000). However, the Seventh Circuit has yet to decide whether this causal connection must be directly made with the criminal conduct

24

with which the defendant is charged, or whether it is sufficient to show merely that the mental condition provides a motive for the crime.[1] Interpreting the guideline to require a direct causal connection would mean that a compulsive gambling disorder would be relevant only to crimes of gambling. On the other hand, interpreting the guideline to require only an indirect causal connection would mean that a defendant could qualify for a downward departure by showing that a compulsive gambling disorder provided a motive to steal. Defendant has urged this court to adopt the latter approach.

A number of courts, including some in this district, have held that a direct causal connection is not required. See, e.g., United States v. Sadolsky, 234 F.3d 938 (6th Cir. 2000) (downward departure warranted where pathological gambling disorder motivated fraud); United States v. Checoura, 176 F. Supp. 2d 310 (D.N.J. 2001) (downward departure warranted where pathological gambling disorder motivated interstate transportation of stolen property); United States v. Ming, No. 00 CR 128-5, 2001 WL 1631874 (N.D. Ill. Dec. 18, 2001) (Guzman, J.) (downward departure could be warranted where evidence shows inability to control behavior that provides motive for crime, but finding insufficient connection under facts presented); United States v. Roach, No. 00 CR 411, 2001 WL 664438 (N.D. Ill. June 4, 2001) (Kennelly, J.) (downward departure warranted where compulsive shopping disorder motivated fraud). Others have required a showing of a direct causal connection. See, e.g., United States v. Carucci, 33 F. Supp. 2d 302, 303 (S.D.N.Y. 1999) ("a compulsive gambler is not, *a fortiori*, a compulsive illegal trader"); see also United States v. Miller, 146 F.3d 1281 (11th Cir. 1998) (pre-1998

---

[1] The issue currently is before the Seventh Circuit, in the appeal of United States v. Roach, No. 00 CR 411, 2001 WL 664438 (N.D. Ill. June 4, 2001) (Kennelly, J.). Arguments were heard on December 3, 2001.

2

amendment case denying request for downward departure where defendant's impulse disorder related to adult pornography and crime was trading child pornography); Venezia v. United States, 884 F. Supp. 919, 926 (D.N.J. 1995) (pre-1998 amendment case denying request for downward departure because no direct causal connection between compulsive gambling disorder and fraud).

It appears to this court that a standard requiring a showing merely that the impairment provides a motive for the crime is a very low one indeed. *Need*, real or perceived, is at the root of many types of crimes, especially embezzlements.[2] As long as the custodian of the funds, here Harris Bank, chooses to disregard commonsense strategies to limit a teller's *opportunity* (to steal without getting caught), there will almost always be a *need*, "compulsive" or "pathological," to steal so long as the teller has an *attitude* that tolerates theft or other criminal or antisocial behavior. If a defendant could qualify for a downward departure by showing that a compulsive disorder provided his motive, then virtually all embezzlements could be excused to some degree, as caused by a *need* for money to gamble, carry on an affair, or to live a more lavish lifestyle.

It simply is not reasonable to believe that the Sentencing Commission did not already take into account that individuals who commit crimes do so out of a need that they perceive they have. As the government notes in its brief, even assuming that defendant cannot control her gambling, defendant is no different than others who commit crimes in an attempt to extricate themselves from difficult financial circumstances in which they find themselves through no fault of their

---

[2] It is the experience of the court that it is the interplay between *need, opportunity* and *attitude* which controls whether a person, here a bank teller, engages in theft. For example, in spite of a poor *attitude* toward stealing and a persistent and perhaps overwhelming enjoyment of gambling creating the *need* to steal, if the bank limits the *opportunity* to steal through daily teller audits there would be no $198,000 loss over a period of time, but only a shortage for a single day. Persistent shortages would not be tolerated and Ms. Jones would not be before this court.

3

own. Many people experience economic hardship, but the Guidelines do not allow courts to use economic hardship as a basis for a departure. See U.S.S.G. § 5K2.12; Koon v. United States, 518 U.S. 81, 93 (1996); United States v. Leahy, 169 F.3d 433, 442 n.7 (7th Cir. 1999). That defendant's gambling problem supplied her motive does not remove her circumstances from the heartland of cases dealing with a wide range of motives to steal.

The language of the application note to the Guideline also supports requiring a direct causal connection. The first clause of the application note, which addresses cognitive impairments, explicitly limits the application of a downward departure to circumstances in which a defendant's impairment prevents him from understanding that the behavior "comprising the offense" is wrongful. See U.S.S.G. § 5K2.13, cmt. n.1(A). In the same sentence, the second clause addresses volitional impairments by again using the words "wrongful" and "behavior," defining "significantly reduced mental capacity" as a "significantly impaired ability" to "control behavior that the defendant knows is wrongful." See id. n.1(B). The repetition of the words "wrongful" and "behavior" in the same sentence supports a reading of the second clause as similarly limiting the Guideline's application to the wrongful behavior that comprises the offense. See Reves v. Ernst & Young, 507 U.S. 170, 177 (1993) (where a word is used twice in the same phrase, "it seems reasonable to give each use a similar construction").

Moreover, crediting these types of compulsion arguments in embezzlement cases such as this, and cases involving other offenses, would certainly undermine the Guidelines' goal of uniformity in sentencing. Every district judge could have his or her own view of an unlimited array of pathologies as being the cause of the particular criminal behavior. This court does not believe that the Sentencing Commission intended such a result.

4

This court concludes that Section 5K2.13 and its application note should be interpreted as requiring a direct causal connection between the impairment and the criminal conduct. Thus, to justify a downward departure under Section 5K2.13 based on a volitional impairment, the defendant must show that (1) she has an impaired ability to control behavior that she knows is wrongful, (2) the impairment is significant, and (3) there is some direct causal connection between the impairment and the criminal conduct with which the defendant is charged. Under this standard, defendant does not qualify for a downward departure under Section 5K2.13 because her showing that her "pathological" or "compulsive" gambling habit created a need for more and more money, and gave her a motive to steal, does not suffice to show that her gambling pathology directly caused the crime with which she is charged.

In any event, defendant would not merit a downward departure under Section 5K2.13 even using the less stringent standard she proposes. Defendant cannot establish even an indirect causal connection between her claimed compulsive gambling problem and her crime, because her claim that her gambling problem is a significant, pathological impairment lacks credibility. Among its reasons for discounting defendant's claim, the court notes that defendant has stated that in spite of being a pathological gambler since age 19, she did not steal from the other financial institutions where she worked for six years before becoming a teller at Harris Bank. Defendant's claim that she has not stolen before undermines her claim that her gambling problem is pathological and significant, because her alleged pathology apparently did not impair her ability to control wrongful behavior during the six years she occupied other banking positions with access to cash. Therefore, even if this court had the power to grant defendant a downward departure under Section 5K2.13, it would decline to exercise its discretion to do so.

5

**ORDERED:** For these reasons, and the reasons stated in the court's oral ruling at the time of sentencing, defendant's motion for a downward departure is denied.

ENTER:

*George W. Lindberg*

George W. Lindberg
Senior United States District Judge

DATED: **MAR 2 1 2002**